Good morning, Your Honors. May it please the Court, I'm Alan Gura, in suit for free speech here on behalf of the appellants. Because this case concerns the regulation of core First Amendment political speech, the government bears the burden of justifying its rule under some form of heightened scrutiny. San Francisco has failed to do that here. Instead, San Francisco gives us a theory of infinite regression. It's donors all the way down that admits to no limiting principle. The city posits that it's not enough for speakers to take responsibility for their ads, because those speakers might be mere shills or facades for their donors. But on top of the requirement that speakers recite their donors' names in their ads, the city reasons that speakers should also spend precious ad time and space revealing their donors' donors, just in case those secondary donors are the real power behind the scenes. But then what if the secondary donors are fronts for tertiary donors? On the city's logic, those could be revealed as well. Well, that may be the logic, but that isn't the thing that's in front of us. That's right, Your Honor. The thing that's in front of us is that we're Is secondary donors all in line. That's correct. So tertiary and whatever the next one is is just hypothetical. That's right. So let's deal with what's in front of us. That's right. And what's in front of us is what we have as a third level of primary level of disclosure on the ads would be the speaker saying, I'm responsible for this ad. That's the first level of responsibility. The second level of responsibility would be requiring the speaker to reveal its donors. And then we're here on the third level, which is the donors' donors. The city seems to be not very interested in the fact that this level of extra disclosure on the face of the communication already obliterates whatever message the speaker is trying to convey. Well, there's a limitation, a size limitation that has been approved in other contexts, so that very small ads don't contain this information at all. So why is there an obliteration? I'm not sure what's been approved in other jurisdictions. In this jurisdiction, there is the only limitation. It depends, I guess, on the, if you're talking about an audio ad or a video ad, the limitation is it depends on the number of secondary donors that you have. For every donor that's a committee of your top three donors, you have to disclose its top two donors. So potentially, you have up to nine donors that have to be disclosed, and those all take time and space. Now, what's interesting, Your Honor, actually raises that because there is a late-breaking development here, which I think kind of helps make our point. I've been informed very recently that on November 15th, the Ethics Commission has proposed an amendment to this law that would try to— Is this in the record? No, it's not. It just happened. I just became aware of it, but I think it makes a point. It's on the website of the Ethics Commission, and what they are proposing to do is follow Judge Breyer's decision from the case a few years ago by eliminating the secondary donor requirement for ads that are up to 30 seconds in length, okay? And they think this will comply with the order in the previous case, which, unfortunately, was good for that case only. Judge Breyer previously denied facial relief, and the case was then ended. Now, if you are a speaker and you have the choice, then, of running an ad, and you can either buy a 60-second ad with a 30-second disclaimer or a 30-second ad with no disclaimer, you're going to buy the 30-second ad. And what we have here is a textbook case of a ceiling on the amount of speech that's going to be presented, because it's irrational to buy a 60-second ad. You'd have to buy a 90-second ad. Well, what you're really saying is that you can avoid the whole problem, right? No. Because in your 30-second ad, you don't have to say anything you don't want to say. But if you want to run a 60-second ad, you can't. You might as well buy a 30-second ad, because those extra 30 seconds, in this case, we had four secondary donors that would have been triggered. It could have been more than that. And we had a 32-second spoken disclaimer. That is a very severe burden on somebody who's trying to speak to the voters. The record is clear on that. And, Your Honor, I'm sure Your Honor is aware of the American Beverage case, where this court, applying Zauderer in essentially a commercial speech context, said that when you had 20 percent imposition on the speech of people selling sugary drinks, San Francisco had failed to make a record showing why that burden was acceptable. In a Zauderer situation here, we have poor political And what we don't have, you know, is even if, you know, before we even get to the tailoring and the burden, we have to talk about what the city's interest might be. Now, the only potential interest here at stake is going to be an informational interest. There's no possibility of corruption, because we're talking about a ballot measure. There's no circumvention interest, because all we're talking here about is a ballot measure, okay? And what is the You say that as if the informational interest in knowing who's behind a ballot measure is frivolous or not very important. But why isn't the city entitled to believe that that's crucial for people to know who's behind, who's really behind an effort to change the law? Your Honor, I do not mean to suggest informational interest is frivolous or unimportant. What I am saying, Your Honor, is that it's not implicated here. Because the informational interest, as it's been understood with respect to disclaimers, is the interest that the voter may have in knowing who is doing the speaking, who bought the ad. And so in Citizens United, for example, the Supreme Court said, oh, a four-second disclaimer that merely says, you know, so-and-so bought the ad, or we've had instances where courts have approved of disclaimers where the disclaimer makes clear that it's an independent expenditure, it's not connected with the campaign. Those things are informational because they relate to the speaker. But once you're getting into the speaker's donor or the speaker's donor-donor, and I hesitate to add, Your Honor, we're not here challenging. This case does not concern the primary donor disclosure. That's an issue for another day, perhaps, another case that the court might have. But the informational interest that's been approved by courts is information about who is doing the speaking. The speaking here is done by the person buying the ad. That doesn't take that long to express. But when you have a lengthy biblical disquisition about so-and-so begat so-and-so begat so-and-so, the question, the first question is, what's the interest here? The interest that the city posits is, well, there might be a relationship. It's really a speculative interest. It's an invitation to speculate about potential arrangements and conspiracies. It is sometimes true that a donor agrees with the message that is being propounded by the speaker. It is sometimes true that the donor has no idea what the speaker is going to say, may actually be opposed to the message. And this is why earmarking is important in all the cases that have talked about the disclosure of donors. So, for example, Van Hollen in the D.C. Circuit, which held that 501 groups can't be made to disclose all their donors unless those donors have earmarked their donations for those political purposes because otherwise it's potentially irrelevant and not necessarily informing anybody. Can I just ask for a clarification about the nature of the challenge you're asserting here? It is a facial challenge. You just think that there should be, there are no circumstances under which the second tier of donors can be required to be disclosed. That's what you want us to rule? We have both facial and as applied challenges here. And yes, Your Honor, this is a First Amendment case where the city is offering an assumption that a second level of disclosure is going to advance some kind of interest. That sweeps far too broadly. They haven't yet shown us where that interest is coming from. Okay. Can I, I'll ask your opponent this, but I'll just put it to you. Was there some history of circumvention of the primary disclosure requirement? Because, you know, those folks would just be these committees with these misleading sounding names. And so everyone realized, well, the whole purpose of the primary disclosure requirement is being defeated because no one can figure out who's really the, you know, behind the ads. Committee for happiness or, you know, I mean, they really are all kinds of, you know, screens, I guess. Sure. And the committee for, everybody's for happiness and everybody's against, you know, evil and these things are out there. But the way that that interest is addressed, if it's going to be addressed at all, is by telling the voters who the speaker is, and then the voters can go ahead and investigate that speaker. But for the speaker to say, I am the speaker. And by the way, here are all of my relationships. These are the people I hang out with. These were my parents. Well, that's not, you know, once again, you're not talking about what's actually in front of us when you say that. Your Honor. Plus the parents have donated $100,000 and then I guess they might be. But see, but we don't know that a donor to a donor has any knowledge of what that first donor is doing with respect to an election. And the Chu example that's before the court is illustrative of the problem. Here we have the Edley Dems who gave money to no one. Okay. And Edley Dems also took money from, they took money from a Chu for assembly. And the city spends half a page in its brief explaining what we already know that Mr. Chu used to be in the assembly. Now he's a city attorney. And of course, he didn't know when he was in the assembly that this proposition would even occur, let alone the Edley Dems would support the proposition. And of course, it's not appropriate for Mr. Chu as a city attorney to take a position on a measure that's before the voters in the city election. All that's well and good, but the city has 14,000 words in its brief to explain that. I have not read aloud that page to see how long it would take to reveal that in an ad. But if no one has to open its ad by saying that they took money from, among others, the Edley Democrats, and Edley Democrats took money from Chu for assembly, voters could be smart enough to know, you know, if they're political nerds and they follow these things, they could know that, oh, sure, yes, he used to be in the assembly. But he could also be confused. And Mr. Chu, for all we know, we don't know what his position is on all these ballot measures. And he won't tell us because he can't. Well, that's why I asked what the nature of the challenge you really want us to rule on is. Because, yeah, you come up with one example of where this secondary disclosure maybe it's problematic. You say it's actually going to mislead voters. And okay, well, maybe that's true in this one kind of unique instance. But that doesn't provide a basis for facially invalidating the entire measure. So I could imagine a ruling that just says, yeah, this is facially okay. There are certainly as applied challenges that could be brought. Maybe that's one of them. I don't know. Because, Your Honor, the city here bears the burden. The city bears the burden. That's not quite right. This is the denial of an injunction, correct? Yes, it is. So we're reviewing for abuse of discretion, are we not? That's correct. Your Honor, I'm addressing the question of on the facial challenge, why would it state a claim, I suppose, if that was Judge Watford's question. Because in a facial challenge to a First Amendment facial challenge, where strict scrutiny or heightened scrutiny, whichever applies here, we think it's strict scrutiny. But even if it's heightened scrutiny, the burden is still with San Francisco to tell us what their interest is. The case has used the phrase exacting scrutiny. Exacting scrutiny applies to disclaimers. And exacting scrutiny may apply to disclosures. But it does not apply to compelled speech as a general matter. Okay? So when the Supreme Court in Citizens United said that a four-second disclaimer about who bought the ad is going to be acceptable, they did not undo the entire compelled speech doctrine. It is still a law that where the government regulates the content of speech and they regulate the content of political speech in a manner that reduces the amount of speech that exists or alters the speaker's message, which this certainly does, strict scrutiny applies. And because even if there's a carve-out, an exception, a de minimis exception for the primary level, the speaker's level of ownership of the ad, that doesn't mean the city can take that and basically use that to hijack the ad and stuff the ad with, you know, a very lengthy message about other things, which this essentially is. But with respect to the facial challenge aspect, it's the city's burden. They are the ones that have to tell us what their interest is. And their interest that they've asserted is, well, it might be important. That's speculative. Well, but no, I guess I'll ask the question, as I said. But what if the interest is simply, yeah, we thought we could make this work with the primary disclosure requirement, but nope, it didn't work, because people just circumvented it really easily by creating these committees to do the giving. And so it didn't inform the voters about anything. Voters continued to be kept in the dark. And so we — not that we wanted to go to this next level, because, yeah, it certainly clutters up these ads. It's burdensome, whatever. But that's the only way our interests can be vindicated. Okay. Two points, Your Honor, in response to that. First of all, there's nothing in the record whereby they have done anything to try to back up this supposition. So, you know, they've failed to make their burden. Just like an American beverage, there was nothing in the record. Actually, in that case, I believe, the city had an expert talk about the level of impact, and this court found it insufficient. But here, I don't think the record is that developed. Second, there has to be some kind of limiting principle, some kind of legal concept that So, for example, what if the city said, you know, a lot of voters care about the astrological signs of a candidate? Do they have to disclose that? You know, the voters may want to know. Maybe it's important to some people. But, you know, that's not something that I hope the Supreme Court would approve of, nor would this court. I don't think there's any question that there's a legitimate and important interest on the city's part in informing voters about who's really behind a particular ad for a ballot measure. I just — I don't think you're going to be able to contest that. Maybe you can contest the astrological sign, fine, but not this interest. But, Your Honor — The only question is whether this has now become too burdensome, I think. That's what I hear you saying. Okay. Your Honor, we do not contest the informational interest with respect to the speaker who is buying. That is clearly established. That's out there. We also do not contest the informational interest. We don't concede it, but we don't contest it — Right. — as far as the first level of donors. Right. And I understand that that's an open question, and I can see Your Honor's point that that argument can be made. But here we are talking about not someone who gave money to even a primarily formed committee that — you know, and there are some donors who speak about many things. Here you can say, well, it's a primarily formed committee. They only exist for one reason, to deal with this one particular measure. Fine. We could, you know, agree to that. You know, we can assume that for the sake of argument. But now we're talking about the second level of donation. And that is simply too attenuated. The assumption — Why is that attenuated? Because the primary committee's only purpose, to come back to what your argument is, is to promote or oppose a ballot measure or to promote or oppose a candidate. So if I, as an individual, or I in charge of the committee, can contribute to that, then how is that not knowingly and intentionally and deliberately, you know, riding along with the same political purpose as the primary committee? That could be a good argument for people arguing the next case, dealing with primary level donations. But if you are not donating to the Committee for Happiness, then you have no connection to the Committee for Happiness. Maybe you oppose it. Maybe you just don't feel that strongly about it. You're probably unaware of it. The fact is that as we go further and further down, away from that speaker ownership of the ad, the interests change. And I take very well the point of view that the first level disclosure could be something. There will be other cases on it. This is not that case. And your Honors, for sure, if we happen to, unfortunately, lose this case, if you can require a second level donation disclosure on the face of an ad, then you can require the first level donor donation. In fact, I'm not sure how you make the second one without making the first one. But we're only talking about the second one. And if your Honor wants to give to some group, and then that group gives to another group, that's not necessarily something that you've aligned yourself with, your Honor. And the voters, the city may not have the same level of interest in telling the voters about that. And if I may reserve the rest of my time for rebuttal. Of course. But let me just pause and see. Judge Gould, do you have questions for? No questions. Okay, very good. We'll certainly give you time for rebuttal. Let's hear from Council for the City. Good morning, Your Honor. May it please the Court. Tara Steele, on behalf of the City. I'd like to begin, if we could, with mootness briefly, because we did not have the opportunity to respond to it in the briefing. This appeal is moot, even if the case as a whole is not. And this appeal is moot because before the District Court, the appellant sought a TRO, or Preliminary Injunction, as applied to themselves with respect to harm they claimed they would face in the upcoming June election. Now that that election is long over, this appeal is moot. That doesn't mean the case as a whole is moot. And in fact, in the briefing, appellants said, well, you know, we have a claim for damages. We have a claim for facial relief. Those claims can be adjudicated. But that's simply an incapable of repetition, yet evading review exception does not apply. That exception, as its name suggests, applies only where the issue would otherwise evade review. And by appellant's own argument, that's not the case here. Because the District Court will be able to evaluate the claims, whether in the context of damages or in facial relief, and would be able to reach final judgment that this case could then, this court could then review. So this appeal is moot, even if the case can proceed at the District Court level. Turning to the merits, the exacting scrutiny standard applies here. We know that from Citizens United. We know that from Americans for Prosperity. And no case that I'm aware of holds otherwise. And, you know, as the prior discussion illustrated, the city has important informational interests here that are furthered by this measure. Can you just address the question that I said I would put to you, which is, is there evidence in the record that the primary disclosure requirement, you know, that first tier, that that was being evaded and that was why this became necessary? So, you know, no, is the brief answer to that question. We were proceeding on a TRO basis, so the papers came in within days of the complaint being filed. So we don't have a very developed record of the history of documented that history throughout the country. The Supreme Court mentioned it in the O'Connell case. This court recognized it in the Heller case. It's a, it's a very common feature of election law that, you know, the cat and mouse game, right? The government makes regulations and people try to evade them. Am I right in thinking that there is no other municipality or state that has this secondary donor requirement on disclaimers? That's why I wondered why, whether there was something unique about, you know, San Francisco. Maybe there is. There's a lot of things unique about San Francisco, but it made me wonder, is there, is there some special reason why you all ended up thinking, even though, you know, the primary disclosure, the primary donor disclosure has worked everywhere else, not here. We need this, this extra measure of disclosure for it to inform our voters. Right. So this measure was adopted by the voters with overwhelming support a few years ago. And what, what the voters, what the people who put this on the ballot said, and what the voters approved, is that this would allow us to shine sunshine on dark money interests. And there were numerous examples in the ballot materials of committees that were, again, hiding behind creative or you know, that sort of name. And so that's what the voters reacted to, that they wanted more disclosures. They wanted more fulsome disclosures. The prior time of this measure was before the court. The same parties argued that in their disclosure, they would have to disclose that a secondary donor was the American, the Association of Realtors, and that would be an unpopular donor in San Francisco. And so they claimed their informational interest was to try to disclosure. But that's the very kinds of disclosures that the voters wanted, right? They wanted that secondary level so they could see the political ties and the interests that were behind the ballot measure at issue. Can you respond, though, to the, to the argument your opponent makes, which is that in at least some, maybe, I don't know if I was going to say many, but at least some instances, actually, the information the voters would be receiving might well be misleading. Precisely, take the example, the kind of extreme example that he offered in the briefs and here. Can you respond to that? Because that struck me as, yeah, there's, I can see how that might not be very helpful and it might actually misdirect voters in certain circumstances. Your Honor, there may be, there may be instances. I'm sure we could come up with hypotheticals, but what the Supreme Court tells us is that we cannot assume voter confusion in the case and we cannot speculate about it because we are assuming an informed electorate. And so, in the absence of evidence of voter confusion, we should not assume that it exists. And here, you know, we've had. It's not, just if I can interrupt, I'm sorry. It's not a question of assuming. It's not, it's not hard to imagine a scenario in which, you know, Judge Graber gives to this committee, is all for whatever that particular committee does, has no knowledge that they in turn are going to give to this other committee. And what if it turns out that she's completely opposed to the, this other ballot measure they're supporting and her name is, that would mislead donors, donors, it would mislead voters, wouldn't it? So, it would not, Your Honor, because all the secondary contributor requirement is telling us is that that contributor gave to that committee who gave to the committee that's funding the ad. It doesn't tell us anything about their support for the measure. And it's not designed to. The secondary contributor requirement is designed to tell us about the speaker. Who are their sources? Who are the people behind them? Who are their. On the theory that maybe they'll be beholden to those people, whether they support the particulars or not? On the theory that it helps the voters, it's a shorthand for the voters to understand the speaker and to understand the political, the cast of political characters on their side of the speech, right? To understand where they're coming from. And so, you know, perhaps there's a hypothetical. This is, again, an as-applied challenge. We have no evidence of that in this case. But, you know, if there is a situation where there's a circumstance where there's a, you know, secondary donor that's diametrically opposed and does not want to appear on an ad, that can be presented in an as-applied challenge. We don't have any evidence of that in this record. I want to, I'm going to ask you if I'm, if that completes your, I want to go back to mootness. I'm sort of thinking about that. Because one of the challenges here is a facial challenge. And as you note, that challenge is not moot. And the, the denial of the injunction denies, denies it with respect to the facial challenge and not just with respect to the particular election. So, explain to me why you think it's moot? So, Your Honor, the district court only ruled on the as-applied challenge. Expressly in the order, the district court said, the only thing before me is an as-applied challenge. And that's all that the district court adjudicated. And so that's the order that we have before this court. The facial challenge has not been considered by the district court. And, in fact, it wasn't presented for decision to the district court. I can cite to where the district court said that, if that would be helpful. Yeah, that would. If you could give me a moment. On ER-5, the district court said this motion presents an as-applied challenge. And it cites to the proposed order that the plaintiffs put in, which requested only an as-applied challenge. I'm sorry, I'm looking at ER-5, but I'm just not seeing it. ER-5, line 16, Your Honor. It says their motion presents an as-applied challenge. I see, okay. And again, a footnote later on, the district court also said that the court was not evaluating a facial challenge. Sorry, and that's footnote 5, ER-14. So, in turning to the, if there are no other questions about mootness, I'll turn to further on to the merits. So, the counsel for appellants says that our informational interest can be served by disclosures, the same disclosures that already exist. But they have not shown that the district court abused its discretion in finding that those disclosures would not serve the city's informational interest. And that's for two reasons. First, the disclaimers are only seen by voters who have the interest and time and motivation to look for them, whereas disclaimers are heard by all voters who hear or see the advertisement. And the second important point is that disclaimers are viewed by the people who see the advertisement at the same time they see it, whereas disclosures are only found later, if someone looks for them later. And so, the city's informational interest of letting the voters know who is speaking is not, are not furthered by disclosures in the same way. So those, that proposed alternative just simply doesn't serve the city's interests. Yeah, but I don't know. Again, you say informing the voters as to who's speaking, but that's why I say there are, we can think of plenty examples where that's not what the voters are learning at all. They're learning that somebody gave some money to an organization and they might well be totally opposed to what that committee, the committee that's putting out the ad now is advocating. So what the social science research tells us is that voters use that information to locate the speaker on a political spectrum to help evaluate the speech. And so, and if there are situations where there is there, if there is demonstrated confusion in some instance, if there is confusion in some instance, we can evaluate that in as applied challenge. But again, we have no evidence of any voter confusion here. This measure has been in place for seven election cycles and there still is no evidence of voter confusion caused by the requirement. Can you just help me understand, in light of the late-breaking news that your opponent disclosed, but just what is the state of play in terms of how much of an ad can be consumed by, you know, by these disclaimers? Because there are a couple of examples in the world where, my goodness, it's like 70% and you can barely see the message in it. Yeah, so I will say, you know, first of all, we're not seeing, again, we've had seven election cycles, we're not seeing problems like that occur in the real world. We don't get complaints, we don't get questions, it's the application of the law has not been problematic in San Francisco. But in the couple of examples that are on the record before you, where the disclaimer has ended up taking a large portion of the space, the city has readily agreed to not enforce for those size ads. And so that came up in the prior case and that came up in this case, where the city has not enforced above the amount that was approved in Citizens United. And in Citizens United, the disclaimer took 40% of the ad space and the Supreme Court affirmed that. So the city has not enforced anything at or above that level. So if I come in and I say, here's my ad and if I have to make this second tier disclosure thing on there, it's gonna take up 60% of you, you just say, okay, well that's fine, just don't put it on there, you're okay? Yes, the city has not enforced at that level. But again, it is showing up in, you know, in this instance, in the case before you. And so is there some effort, as your opponent was suggesting, to, I guess, codify whatever guidelines? Because that just sounds like, what if I don't know about that and my speech is nonetheless chilled, you know? So, you know, as counsel pointed out, the Commission is considering a proposal. It hasn't been enacted or adopted, but it would enshrine the order from the District Court in the last litigation that would propose a cap on, so to prevent that problem from occurring. If there are no other questions, I'll submit. Okay, very good. We have some time for questions. As I said, we don't get many complaints. Well, they got two complaints from Mr. David, this is one of them. And they may not be seeing the ads that people choose not to run. The laws are out there, they dissuade speech. Obviously, we have examples of ads that cannot be run. With respect to the state of the record, it's true the District Court might have thought it only had before it an as-applied motion. That's simply not the case. And again, the record is different. Looking at the supplemental excerpts of records, SCR 094, the first paragraph there, that's our notice of motion in motion. And there's no limitation to the general action there. It simply asks the Court to enjoin the challenged provisions without limitation. And then if we look at the brief, which our opponents have helpfully attached as well, at SCR 110, lines 10 and 11, the requirements are unconstitutional both facially and as applied to the committee's speech. And that page, a few pages later, SCR 112, lines 15 to 17, whether under strict scrutiny as in Heller or under exacting scrutiny, San Francisco's on-communication secondary dormant disclosure fails, tailoring, and is facially unconstitutional. Now — Can I ask, though, are you disputing, though, that the District Court limited itself to ruling on just an as-applied challenge? If it limited itself to that, then it erred. And it should be reversed for that error. The fact is that we are seeking preliminary injunctive relief with respect to the statute on its face. And, Your Honors, if I may point, I see my time is running short. It's okay. There's one circuit case that's been cited in this entire proceeding, I think by the amici from the First Circuit, the only circuit court that's approved of even primary level donor disclosure in Gaspi Project v. Medeiros. Here's what Judge Celia had to say. Now, we do not necessarily agree with the outcome of that case, but I think some of the words here are interesting. I'm quoting here. This is a 13-F fourth at 92. Beyond self-identification, the State does not have limitless power to acquire more from a speaker such as identification of its donors, close quote. Now, I would dispute that the State has limitless power even with respect to self-identification. That's — I think the pros may have gotten ahead of the court in that instance. But even in Gaspi Project, there was an awareness that we're approving your first level of power, and this is just the first case, and this is just the very tip of the iceberg. We don't really know what lurks beneath here. Over here, I would submit, Your Honors, there is no interest that has been asserted and proven by the City. And even if there were some kind of conceivable interest, by the time you get to that level of attenuation when you speak about secondary donors, impact also needs to be justified, and it has not been justified. Thank you, Your Honors. Okay. Thank you both very much for your helpful arguments in this case. The case just argued is submitted, and we are adjourned for this session of the court.
judges: GRABER, GOULD, WATFORD